IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


DHIRAJ "RAJ" SOLOMON,

       Plaintiff,

  -vs-                                                              CIV No. 16-0012 LH/KBM

TRC COMPANIES, INC. dba TRC
ENVIRONMENTAL CORP. and
HOWARD HIGGINS,

       Defendants.


**MEMORANDUM OPINION**

      **THIS MATTER** is before the Court on Plaintiff's Motion to Remand (ECF No. 8).  The Court, having reviewed the Motion, the memoranda of the parties, and the applicable law, and otherwise being fully informed, finds that the Motion is well taken and will be **granted**.

      As alleged in his Notice of Appeal and Complaint for Employment Discrimination, Retaliation, and Wrongful Discharge ("Complaint"), filed in state court on November 13, 2015, Plaintiff Dhiraj "Raj" Solomon ("Solomon") is of East Indian Asian national origin and race and was employed by Defendant TRC Companies, Inc. ("TRC") in its Albuquerque office from January 2013 until being discharged from his position as a Senior Project Manager on September 24, 2015.  Compl. ¶¶ 13, 15.  Defendant Howard Higgins ("Higgins") held the title of Office Practice Leader, was Solomon's direct supervisor, and managed TRC's Albuquerque operations.

*Id.* ¶ 14. Solomon further asserts that Higgins was an officer and agent of TRC, was responsible for the management and affairs of TRC's New Mexico offices, and acted on behalf of TRC, particularly as related to Plaintiff, and that both Defendants were employers and persons within the meaning of the New Mexico Human Rights Act ("NMHRA"). *Id.* ¶¶ 4-5.

Beginning no later than February 12, 2014, and continuing until immediately before his discharge, Solomon complained to Higgins, other TRC managers, and the Human Resources Office about his disparate pay compared to other employees. *Id.* ¶ 18. Although Defendants promised to address his claims that he was paid substantially less than similarly situated employees, they never did so. *Id.* From September 2013 through February 2014, Plaintiff also complained to TRC that Higgins was driving to work with signs of intoxication and smelling of alcohol, and he requested that TRC take remedial action against Higgins. *Id.* ¶ 19. TRC, however, failed to investigate. *Id.* In January 2014 Solomon reported that Higgins had been charged with driving while intoxicated. *Id.* In February 2014, Solomon reported to managers that Higgins was operating a vehicle to perform TRC business without a legally required interlock device. *Id.* ¶ 20. TRC then did investigate and took corrective action. *Id.*

Solomon alleges that following his having under taken these protected activities under New Mexico law, Defendants subjected him to terms and conditions of work that adversely affected his ability to perform assigned tasks. *Id.* ¶ 21. These actions included not crediting him with completion of assigned tasks, adversely affecting his performance ratings; subjecting him to substantially different performance criteria and providing inadequate resources for travel and training compared to similarly situated employees; and excluding him from important managerial meetings that were necessary to the performance of his assigned tasks. *Id.* Solomon

protested throughout 2014 about the disparate and hostile work conditions to which he was subjected following his protected activities, but notwithstanding, continued to perform his assigned tasks in a fully competent and satisfactory manner. *Id.* ¶ 22.

In March 2015, Plaintiff was identified as a witness in a discrimination complaint filed with the New Mexico Human Rights Bureau ("NMHRB") by a former TRC employee, and he provided statements and documents to the TRC attorneys and managers investigating that complaint. *Id.* ¶ 23. In July 2015, Plaintiff reported, as required by law, what he believed to be a violation of federal regulations and a contract that he managed pursuant to his employment with TRC. *Id.* ¶ 24.

On August 12, 2015, Solomon filed a complaint of retaliation and discrimination with the NMHRB. *Id.* ¶ 25. He reported his claims of discrimination and retaliation to his managers at TRC on August 17, 2015. *Id.* ¶ 26. His claims then were reported to the TRC attorneys who were defending the March 2015 complaint in which Plaintiff was named as a witness. *Id.* Due to the concerns of his physician that the work environment was injurious to his health, Plaintiff requested medical leave on August 18, 2015. *Id.* ¶ 28. Defendants discharged Solomon for unspecified cause on September 24, 2015. *Id.* ¶ 29. Plaintiff filed a second complaint with the NMHRB on October 19, 2015. *Id.* ¶ 9.

In his Complaint, Solomon brings claims under the NMHRA and state common law and alleges that both he and Defendant Higgins are residents of Bernalillo County, New Mexico. *Id.* ¶ 4. In Count I, Plaintiff claims employment discrimination based on national origin, race, and color against TRC and Higgins, in violation of the NMHRA. *Id.* ¶ 34. He asserts that Defendants unlawfully discriminated against him in the terms, conditions, and privileges of

employment by paying him less than other employees performing substantially similar job duties; by subjecting him to a hostile work environment and imposing work rules, conditions, and standards not imposed on other employees; and by discharging him.  *Id.* ¶ 34(a)-(c).  He also claims that because of his complaints about unlawful discriminatory practices and his status as a witness and complainant in proceedings under the NMHRA, Defendants unlawfully retaliated against him by subjecting him to a hostile work environment and imposing work rules, conditions, and standards not imposed on other employees and by discharging him on September 24, 2015.  *Id.* ¶ 35(a), (b).

In Count II of the Complaint, Plaintiff brings a breach of employment contract claim against TRC.  *Id.* ¶¶ 39-49.  Count III, brought as an alternative to the allegations set forth in Count II, states a retaliatory discharge claim against both Defendants TRC and Higgins.  *Id.* ¶ 50.  Plaintiff charges that they acted in concert and for a common unlawful purpose by discharging him in retaliation for his actions in furtherance of public policy, those being his reports of and opposition to TRC's unlawful pay practices and unlawful charges to a federal contract, and Higgins' unlawful use of motor vehicles.  *Id.* ¶ 52.

Defendants removed this case to federal court on January 7, 2016, asserting diversity jurisdiction.  They aver that TRC is incorporated in Connecticut and has its principal place of business there.  They also maintain that Higgins has been fraudulently joined, claiming that there is no possibility that Plaintiff can establish a cause of action against him, and his citizenship, therefore, should be disregarded.  Plaintiff now moves to remand this action to state court.

4

An action is removable from state court if the federal district court has original jurisdiction over the matter. 28 U.S.C. § 1441(a). Pursuant to 28 U.S.C. § 1332(a), a federal district court possesses original subject-matter jurisdiction over a case when the parties are diverse in citizenship and the amount in controversy exceeds $75,000.00. *See Johnson v. Rodrigues*, 226 F.3d 1103, 1107 (10th Cir. 2000). There is a presumption against removal jurisdiction. *See Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995); *see also Okla. Farm Bureau Mut. Ins. Co. v. JSSJ Corp.*, 149 F. App'x 775, 778 (10th Cir. 2005) (explaining that "[g]iven the limited scope of federal jurisdiction, there is a presumption against removal, and courts must deny such jurisdiction if not affirmatively apparent on the record."). As the party invoking the Court's jurisdiction in this case, TRC "bear[s] the burden of establishing that the requirements for the exercise of diversity jurisdiction are present." *See Martin v. Franklin Capital Corp.*, 251 F.3d 1284, 1290 (10th Cir. 2001); *see also Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002) ("The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction.").

"In order to invoke diversity jurisdiction, a party must show that complete diversity of citizenship exists between the adverse parties. . . . Complete diversity is lacking when any of the plaintiffs has the same residency as even a single defendant." *Dutcher v. Matheson*, 733 F.3d 980, 987 (10th Cir. 2013). While TRC does not dispute that Plaintiff and Higgins are both citizens of New Mexico, it contends that the case is nevertheless removable because Higgins was fraudulently joined in this action by Plaintiff in an attempt to defeat diversity jurisdiction. "To establish fraudulent joinder, the removing party must demonstrate either: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action

5

against the non-diverse party in state court." *Id.* at 988. TRC relies on the second prong of the fraudulent joinder test, arguing that Plaintiff is unable to establish a cause of action against Higgins in state court.

"The defendant seeking removal bears a heavy burden of proving fraudulent joinder, and all factual and legal issues must be resolved in favor of the plaintiff." *Id.* (internal citation omitted). The Tenth Circuit has described the defendant's burden to prove fraudulent joinder as follows:

> To prove their allegation of fraudulent joinder [the removing parties] must demonstrate that there is *no possibility* that [plaintiff] would be able to establish a cause of action against [the joined non-diverse party] in state court. In evaluating fraudulent joinder claims, we must initially resolve all disputed questions of fact and all ambiguities in the controlling law in favor of the non-removing party. We are then to determine whether that party has any possibility of recovery against the party whose joinder is questioned.

*Montano v. Allstate Indem.*, 2000 WL 525592, at *1 (10th Cir. 2000) (emphasis added) (quoting *Hart v. Bayer Corp.*, 199 F.3d 239, 246 (5th Cir. 2000)). "This standard is more exacting than that for dismissing a claim under Fed. R. Civ. P. 12(b)(6); indeed, the later entails the kind of merits determination that, absent fraudulent joinder, should be left to the state court where the action was commenced." *Id.* at *2 (citing and quoting parenthetically *Batoff v. State Farm Ins. Co.,* 977 F.2d 848, 853 (3d Cir.1992) ("A claim which can be dismissed only after an intricate analysis of state law is not so wholly insubstantial and frivolous that it may be disregarded for purposes of diversity jurisdiction.")). The court, however, is not compelled to believe whatever the plaintiff says in his complaint; rather, "upon allegations of fraudulent joinder designed to prevent removal, federal courts may look beyond the pleadings to determine if the joinder, although fair on its face, is a sham or fraudulent device to prevent removal." *Id.* (quoting *Smoot*

*v. Chicago, Rock Island & Pac. R.R. Co.,* 378 F.2d 879, 881–82 (10th Cir.1967)).  Remand to state court is required if any one of the claims against the non-diverse defendant, here Defendant Higgins, is "possibly viable." *Id.* at *2.

Defendants assert in their Notice of Removal ("Notice") that the NMHRA prohibits certain discriminatory behavior by "an employer, including any person acting for an employer," and that Plaintiff's NMHRA claims against Higgins fail because

> Higgins did not supervise Plaintiff nor set Plaintiff's salary, performance criteria, or conditions of employment, did not conduct or provide input to Plaintiff's performance reviews, did not terminate Plaintiff's employment, was not responsible for and had no authority to approve Plaintiff's requested medical leave, had no knowledge of the discrimination or retaliation alleged by Plaintiff and was not responsible for investigating such complaints, and was not familiar with the contract for which Plaintiff complained of alleged violations and referred him to his supervisor in accordance with TRC's policies and procedures.

Notice ¶¶ 14-15.  Defendants further maintain that Solomon cannot state a claim of retaliatory discharge against Higgins, under either the NMHRA or New Mexico common law, because

> Higgins did not terminate Plaintiff nor have any input into the termination decision, did not have any knowledge of Plaintiff's alleged reports of discrimination or retaliation, nor was he responsible for investigating such complaints.

*Id.* at ¶ 17.  Defendants attach the Affidavit of Howard Higgins in support of these allegations in their Notice.  Notice Ex. C., Higgins Aff.

In his Motion to Remand, Plaintiff submits that claims brought pursuant to the NMHRA are not restricted to employers or supervisors and can entail any form of threat, reprisal or discrimination.  He cites to the NMHRA, which provides in pertinent part:

> It is an unlawful discriminatory practice for:
>    . . .

7

> I. any person or employer to:
>    (1) aid, abet, incite, compel or coerce the doing of any unlawful discriminatory practice or to attempt to do so;
>
>    (2) engage in any form of threats, reprisal or discrimination against any person who has opposed any unlawful discriminatory practice or has filed a complaint, testified or participated in any proceeding under the Human Rights Act . . . .

N.M.S.A. § 28-7-7(I)(1), (2).

Plaintiff initially argues, however, that Higgins did in fact exercise supervisory control over the terms and conditions of his work and that he aided and abetted in Plaintiff's termination and Plaintiff attaches his affidavit in support. *See* Mot. Remand, Solomon Aff. (ECF No. 8-1). While admitting that his technical work was supervised by others, Plaintiff contends that functions such as management of contracts, work environment, travel and expense budgets, billings and overhead rates, and salary all were supervised and/or influenced by Higgins, and that these are the areas encompassed within his Complaint. Additionally, while acknowledging that Defendants challenge his allegations that Higgins exercised supervisory control over his work and created a hostile work environment because of his race and his complaints about his pay, Plaintiff notes that in considering remand, factual disputes are to be resolved in a plaintiff's favor. Thus, he maintains that he could establish that Higgins acted as an agent of TRC and that he caused the establishment of disparate terms and conditions of Plaintiff's work and his termination. Alternatively, he asserts that he could establish that Higgins aided and abetted in the discriminatory and retaliatory acts of TRC, in violation of the NMHRA.

Regarding the common law tort of retaliatory discharge claim in Count III, Plaintiff contends that, such a claim would be allowed in New Mexico against a non-employer where the individual acted outside the course or scope of his employment or where there is evidence of

malicious, willful, or wanton misconduct, citing *Bourgeous v. Horizon Healthcare Corp.*, 117 N.M. 434, 872 P.2d 852 (1994).  In *Bourgeous*, the New Mexico Supreme Court opined:

> We are mindful that officers or employees of corporations can be held personally liable when they commit intentional torts.  Thus, for example, if Bourgeous had presented evidence of malicious, willful, or wanton conduct, she might have had a claim against the individual defendants for intentional infliction of emotional distress.  *We leave open the question whether a retaliatory discharge claim lies against a supervisor, agent, or coemployee if the firing was an intentional act done solely for the supervisor, agent, or coemployee's own interest and therefore outside the scope of employment.*  Here, there was no evidence in the record that either of the individual defendants acted outside the course and scope of their employment, nor was there any evidence of malicious, willful, or wanton conduct.

117 N.M. at 437-38, 872 P.2d at 855-56 (internal citations omitted) (emphasis added).  Thus, Solomon contends that even if his allegation that Higgins' actions were within the course or scope of his employment is rejected by the fact finder, as Defendants argue, he still could establish a claim of retaliatory discharge based on Higgins' conspiring with the TRC employees responsible for his discharge, in order to promote Higgins' own interests, or by showing that Higgins' actions were willful, wanton, or malicious.

Defendants first respond by attacking Plaintiff's Affidavit as self-serving and a sham, and insufficient to support his Motion to Remand.  Defs.' Resp. (ECF No. 12) at 2.  They then offer the Affidavit of Dale Weiss in support of their allegations that Higgins could not have committed the acts of which Plaintiff complains "because he did not supervise Plaintiff, did not work in the same company division . . . , did not set the terms or conditions of Plaintiff's employment, did not terminate Plaintiff's employment, and had no input in Plaintiff's hiring or termination."  *Id.* at 4-5, 7; Ex. A, Weiss Aff.  Thus, they conclude, Higgins "could not have aided and abetted alleged discrimination as claimed by Plaintiff."  Defs.' Resp. 7.  Similarly, Defendants conclude

that Plaintiff's common law retaliatory discharge claim fails, because "Higgins did not terminate Plaintiff." *Id.*

In his Reply, Solomon notes that Defendants "primarily rely on their own self-serving and unsupported affidavits," which he argues can establish, at best, only a question of fact regarding Higgins' supervisory control over Plaintiff, a factual dispute that must be resolved in his favor. Pl.'s Reply (ECF No. 14) at 1-2. Plaintiff also observes that Defendants failed to address his argument that supervisory authority or an agency relationship with the employer is not required to establish a claim against Higgins under either the NMHRA or the common law tort of retaliatory discharge. Thus, Plaintiff contends that even if he did not dispute Defendants' denial of supervisory control, he has alleged facts showing direct retaliation by Higgins. *Id.* at 2; *see also* Solomon Aff. (ECF No.14-1) ¶ 19 ("When I confronted [Higgins], he told me, 'it was payback time for him.' Higgins told me that by raising issues related to his DWI and intoxication, I had caused him embarrassment and damaged his career at TRC.").

Defendants' evidentiary objections to Plaintiff's affidavit are not well taken at this stage of the litigation. *See e.g., Montoya v. Penske Truck Leasing Co., LP*, 2010 WL 5690210, at *8 (D.N.M. June 23, 2010) ("At this stage in proceedings, the Court accepts the statements in Plaintiff's affidavit for the purpose of determining whether his claims are 'possibly viable,' *Montano*, [2000 WL 525592,] at *2."). Additionally, Defendants have not addressed the possibility that supervisory authority or an agency relationship with the employer is not required to establish a claim under either the NMHRA or the common law tort of retaliatory discharge, and their legal argument is based solely on the disputed fact of whether Higgins exercised

10

supervisory control over Solomon. Thus, Defendants have not met the heavy burden of proving fraudulent joinder in this matter. Evaluating the factual allegations in the light most favorable to Plaintiff, resolving all contested issues of substantive fact in Plaintiff's favor, and resolving any uncertainties as to the current state of controlling substantive state law in favor of Plaintiff and against Defendants, the Court finds that there is arguably a reasonable basis for predicting that state law might impose liability on Defendant Higgins. *See* 16 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 107.52[4][d] 107-93 to 95 (3d ed. 2016). Therefore, the Court cannot find that Defendant Higgins was fraudulently joined, there is not complete diversity of citizenship between the adverse parties, the Court lacks subject-matter jurisdiction over this matter, and Plaintiff's Motion to Remand must be granted. No fees or costs will be awarded.

WHEREFORE,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Remand (ECF No. 8) is **GRANTED**.

**IT IS FURTHER ORDERED** that this action is **REMANDED** to the Second Judicial District Court, County of Bernalillo, State of New Mexico.

_____
**SENIOR UNITED STATES DISTRICT JUDGE**